1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    GARDENIA G. DELUNA,                        Case No.  1:23-cv-00902-HBK

12                   Plaintiff,                  ORDER DENYING PLAINTIFF'S MOTION
                                                 FOR SUMMARY JUDGMENT, GRANTING
13          v.                                   DEFENDANT'S MOTION FOR SUMMARY
                                                 JUDGMENT, AND AFFIRMING THE
14    MARTIN O'MALLEY,                           DECISION OF THE COMMISSIONER OF
      COMMISSIONER OF SOCIAL                     SOCIAL SECURITY[2]
15    SECURITY,[1]
                                                 (Doc. Nos. 15, 17)
16                   Defendant.

17

18

19

20          Gardenia G. DeLuna ("Plaintiff") seeks judicial review of a final decision of the

21    Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22    supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is

23    currently before the undersigned on the parties' briefs, which were submitted without oral

24    argument.  (Doc. Nos. 15, 17).  For the reasons stated, the Court denies Plaintiff's motion for

25

26    [1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social
      Security.  (*See* Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the
27    Acting Commissioner of Social Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).
      [2]  Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
28    §636(c)(1).  (Doc. No. 6).

1   summary judgment, grants Defendant's motion for summary judgment, and affirms the

2   Commissioner's decision.

### I.      JURISDICTION

4       Plaintiff protectively filed for supplemental security income on March 27, 2017, alleging a

5   disability onset date of March 27, 2017.  (AR 195-217).  Benefits were denied initially (AR 79-

6   99, 121-26) and upon reconsideration (AR 100-16, 130-35).  Plaintiff appeared for a hearing

7   before an administrative law judge ("ALJ") on January 3, 2020.  (AR 40-78).  Plaintiff testified at

8   the hearing and was represented by counsel.  (*Id*.).  The ALJ denied benefits (AR 13-39) and the

9   Appeals Council denied review (AR 2-7).  On July 13, 2021, the United States District Court for

10  the Eastern District of California remanded the case for further proceedings.  (AR 813-14).  On

11  remand, Plaintiff appeared for a telephonic hearing before the ALJ on March 7, 2022.  (AR 723-

12  60).  She testified and was represented by counsel.  (*Id*.).  The ALJ denied benefits (AR 638-76),

13  and the Appeals Council denied review.  (AR 621-32).  The matter is before the Court under 42

14  U.S.C. § 1383(c)(3).

### II.      BACKGROUND

16      The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

17  decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

18  summarized here.

19      Plaintiff was 27 years old at the time of the second hearing.  (AR 732).  She completed

20  twelfth grade.  (AR 246).  She is married and has two children, aged six and seven.  (AR 732).

21  She worked part-time as a Lyft driver in 2019.  (AR 734-35).  Plaintiff testified she had to stop

22  working because of anxiety and back pain.  (AR 735).  She reported experiencing lower back pain

23  "all the time," and describes it as stabbing and burning pain that travels down to her feet at times.

24  (AR 735-36).  On a typical day the pain is a six out of ten.  (AR 736).  Plaintiff testified she also

25  has neck pain that travels to the top part of her back and shoulder, and carpal tunnel syndrome

26  that causes numbness, difficulty grasping, pins and needles, and dropping objects.  (AR 736-38).

27  She can take care of "some of the chores" "a little bit" but can only use her hands for three to five

28  minutes before she has to stop.  (AR 738-39).  Plaintiff reported she can stand for ten minutes

1  before she has to sit down, she can walk for 30-35 steps before she has to take a break, she can sit

2  for 15 minutes at a time, and she can lift no more than 20 pounds.  (AR 739-40).  She testified

3  that she needs help dressing, showering, and "opening stuff" when cooking.  (AR 740-41).  She is

4  enrolled in online school, helps her kids with homework, and plays video games with her kids.

5  (AR 741, 751).

### III.    STANDARD OF REVIEW

7      A district court's review of a final decision of the Commissioner of Social Security is

8  governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

9  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

10  is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

11  evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support

12  a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial

13  evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation

14  and citation omitted).  In determining whether the standard has been satisfied, a reviewing court

15  must consider the entire record as a whole rather than searching for supporting evidence in

16  isolation. *Id.*

17      In reviewing a denial of benefits, a district court may not substitute its judgment for that of

18  the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

19  to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

20  2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

21  harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

22  nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's

23  decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

24  U.S. 396, 409-10 (2009).

### IV.    SEQUENTIAL EVALUATION PROCESS

26      A claimant must satisfy two conditions to be considered "disabled" within the meaning of

27  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

28  activity by reason of any medically determinable physical or mental impairment which can be

3

1   expected to result in death or which has lasted or can be expected to last for a continuous period

2   of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

3   must be "of such severity that he is not only unable to do his previous work[,] but cannot,

4   considering his age, education, and work experience, engage in any other kind of substantial

5   gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

6        The Commissioner has established a five-step sequential analysis to determine whether a

7   claimant satisfies the above criteria.  See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

8   Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

9   claimant is engaged in "substantial gainful activity," the Commissioner must find that the

10   claimant is not disabled.  20 C.F.R. § 416.920(b).

11        If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

12   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

13   C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

14   impairments which significantly limits [his or her] physical or mental ability to do basic work

15   activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

16   impairment does not satisfy this severity threshold, however, the Commissioner must find that the

17   claimant is not disabled.  20 C.F.R. § 416.920(c).

18        At step three, the Commissioner compares the claimant's impairment to severe

19   impairments recognized by the Commissioner to be so severe as to preclude a person from

20   engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as

21   severe or more severe than one of the enumerated impairments, the Commissioner must find the

22   claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

23        If the severity of the claimant's impairment does not meet or exceed the severity of the

24   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

25   functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

26   ability to perform physical and mental work activities on a sustained basis despite his or her

27   limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

28        ////

1    At step four, the Commissioner considers whether, in view of the claimant's RFC, the

2    claimant is capable of performing work that he or she has performed in the past (past relevant

3    work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

4    work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

5    the claimant is incapable of performing such work, the analysis proceeds to step five.

6    At step five, the Commissioner considers whether, in view of the claimant's RFC, the

7    claimant is capable of performing other work in the national economy.  20 C.F.R. §

8    416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

9    factors such as the claimant's age, education, and past work experience.  20 C.F.R. §

10   416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must

11   find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of

12   adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

13   therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

14   The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

15   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

16   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

17   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

18   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

19                          **V.    ALJ'S FINDINGS**

20   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

21   since March 27, 2017, the application date.  (AR 644).  At step two, the ALJ found that Plaintiff

22   has the following severe impairments: mild degenerative disc disease of the lumbar spine, early

23   degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, and morbid

24   obesity.  (AR 644).  At step three, the ALJ found that Plaintiff does not have an impairment or

25   combination of impairments that meets or medically equals the severity of a listed impairment.

26   (AR 649).  The ALJ then found that Plaintiff has the RFC to

27                   to perform light work, as defined in 20 CFR 416.967(b), including
                    the ability to lift and/or carry 20 pounds occasionally and 10 pounds
28                   frequently.  She can frequently stoop, kneel, crouch, crawl, and climb

                                      5

1
2
3

> ramps and stairs.  She can never climb ladders, ropes, or scaffolds.
> She can frequently reach, handle, finger, feel, push and/or pull with
> the bilateral upper extremities.  She can tolerate occasional exposure
> to excessive vibration and to unprotected heights.

4  (AR 651).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.

5  (AR 665).  At step five, the ALJ found that considering Plaintiff's age, education, work

6  experience, and RFC, there are jobs that exist in significant numbers in the national economy that

7  Plaintiff can perform, including office helper, mail checker, and clothing presser.  (AR 665-66).

8  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the

9  Social Security Act, since March 27, 2017, the date the application was filed.  (AR 667).

10  

**VI.    ISSUES**

11  Plaintiff seeks judicial review of the Commissioner's final decision denying her

12  supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1).

13  Plaintiff raises the following issue for this Court's review: whether the ALJ properly assessed the

14  RFC.  (Doc. No. 15 at 18-25).

15  

**VII.    DISCUSSION**

16  The RFC assessment is an administrative finding based on all relevant evidence in the

17  record, not just medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In

18  determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are

19  credible and supported by substantial evidence in the record.  (*Id.*) (RFC determination will be

20  affirmed if supported by substantial evidence).  However, an ALJ's RFC findings need only be

21  consistent with relevant assessed limitations and not identical to them.  *Turner v. Comm'r of Soc.*

22  *Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).  Ultimately, a claimant's RFC is a matter for the

23  ALJ to determine.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it

24  is the responsibility of the ALJ ... to determine residual functional capacity.").

25  

**1.   Physical RFC – Bilateral Carpal Tunnel Syndrome**

26  Plaintiff argues the ALJ had "no reasonable basis for the limitations in [the] RFC"

27  limiting her to frequent bilateral handling and fingering because (1) she found "none of the

28  reviewing physicians captured the totality of Plaintiff's limitations, or alternatively, over-stated

6

1    Plaintiff's feeling, handling and fingering ability, and ruled that no opinion was more than

2    partially persuasive"; (2) she "disagreed with Plaintiff's own assessment that she could not

3    perform handling and fingering for more than three to five minutes at a time"; and (3) she

4    discounted treating opinion of family nurse practitioner Jasmine Hill and the examining opinion

5    of Dr. Samuel Rush.  (Doc. No. 15 at 18-19).  Plaintiff further contends that "[i]n light of the fact

6    that neither Plaintiff's testimony, nor the opinions of the reviewing or examining doctors support

7    the assessed RFC, it is evident that the ALJ relied on her own lay interpretation of the evidence."

8    (*Id*. at 19).  These arguments are inapposite.

9         First, Plaintiff does not specifically challenge the ALJ's finding that the prior

10   administrative findings of the reviewing physicians regarding Plaintiff's manipulative limitations

11   are "mostly persuasive" because they are consistent with the overall record of normal physical

12   examination findings, the mild diagnostic evidence, and history of conservative treatment.  (AR

13   95 (assessing frequent handling and fingering of right upper extremity and occasional feeling of

14   bilateral upper extremities), 111 (same), 659-60).  Similarly, Plaintiff does not specifically

15   challenge the ALJ's finding that Ms. Hill's opinion that Plaintiff could use her bilateral upper

16   extremities including hands and fingers only 5% of an eight-hour workday is not persuasive

17   because the opinion was not well supported by reference to clinical or other objective evidence

18   including Ms. Hill's own recommendation for conservative treatment, and was inconsistent with

19   normal physical examination findings and Plaintiff's ability to perform extensive activities

20   including care of two minor children and working as a Lyft driver which "involves significant use

21   of the hands and feet for driving as well as assisting passengers."  (AR 404, 661-62).  Nor does

22   Plaintiff challenge the ALJ's finding that Dr. Rush's opined limitation of occasional use of

23   bilateral hands for all manipulative activities is unpersuasive because it is unclear what records he

24   reviewed, if any, before preparing his opinion, relies heavily on Plaintiff's subjective complaints,

25   is internally inconsistent, is inconsistent with Plaintiff's work ability including working as a Lyft

26   driver involving use of bilateral upper and lower extremities during hundreds of miles a week, is

27   inconsistent with normal physical examination findings both one month before and after the

28   examination, is inconsistent with longitudinal record of normal examination findings, and is

7

1   inconsistent with daily activities.  (AR 616, 662-64).

2          The Court may decline to consider the ALJ's evaluation of the medical opinion evidence

3   because the issue is not raised with specificity in Plaintiff's opening brief.  *Carmickle v. Comm'r*

4   *of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d

5   996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and

6   distinctly argued" in the party's opening brief).  Regardless, the ALJ properly evaluated the

7   persuasiveness of these opinions pursuant to the revised regulations and incorporated the well-

8   supported limitations due to the claimed impairment of bilateral carpal tunnel syndrome into the

9   assessed RFC.  20 C.F.R. § 416.920c(c)(1)-(2) (outlining consistency and supportability factors);

10  *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022) (the ALJ "must 'articulate ... how persuasive' [he

11  or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how

12  [he or she] considered the supportability and consistency factors' in reaching these findings.");

13  *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("the ALJ may permissibly reject

14  check-off reports that do not contain any explanation of the bases of their conclusion."); *Morgan*

15  *v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999) (ALJ may discount a medical opinion

16  that is inconsistent with a claimant's reported functioning); *Bayliss*, 427 F.3d at 1217 (opinion

17  may be discounted if it relies largely on claimant's unreliable self-report).

18         Second, Plaintiff appears to argue the RFC is not supported by substantial evidence

19  because the "ALJ has failed to put forth any clear and convincing reasons for rejecting Plaintiff's

20  complaints of hand use." (Doc. No. 15 at 19-23).  An ALJ engages in a two-step analysis when

21  evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*,

22  504 F.3d 1028, 1035-36 (9th Cir. 2007).   The ALJ first must determine whether there is

23  "objective medical evidence of an underlying impairment which could reasonably be expected to

24  produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted).  "The

25  claimant is not required to show that his impairment could reasonably be expected to cause the

26  severity of the symptom he has alleged; he need only show that it could reasonably have caused

27  some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

28  quotation marks omitted).  "If the claimant meets the first test and there is no evidence of

1   malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms

2   if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*,

3   763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General

4   findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

5   evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834

6   (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make

7   a credibility determination with findings sufficiently specific to permit the court to conclude that

8   the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing

9   [evidence] standard is the most demanding required in Social Security cases."  *Garrison v.*

10  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

11  F.3d 920, 924 (9th Cir. 2002)).

12      Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

13  be expected to cause some of the alleged carpal tunnel symptoms; however, Plaintiff's

14  "statements concerning the intensity, persistence, and limiting effects of these symptoms are not

15  entirely consistent with the medical evidence and other evidence in the record" for several

16  reasons.  (AR 653).  First, the ALJ noted

17          [b]ecause of her bilateral carpal tunnel syndrome condition and
            recent diagnosis of 'early degenerative disc disease' at the cervical
18          spine, the undersigned finds accommodation of frequent reaching,
            handling, fingering, feeling, pushing, and/or pulling with the bilateral
19          upper extremities is warranted.  However, greater limitations are not
            required given history of normal physical examination findings and
20          history of conservative treatment throughout the entire period under
            review without need for injections or surgery.
21

22  (AR 656).  Medical evidence is a relevant factor in determining the severity of a claimant's pain

23  and its disabling effects, but the ALJ may not discredit a claimant's pain testimony and deny

24  benefits solely because the degree of pain is not supported by objective medical evidence.  *Rollins*

25  *v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

26  2007) (evidence of "conservative treatment" may be sufficient to discount a claimant's testimony

27  regarding the severity of an impairment).

28      Plaintiff argues that the ALJ improperly considered the objective and clinical medical

9

1   evidence as part of her consideration of Plaintiff's symptom claims.  (Doc. No. 15 at 19-22).

2   First, Plaintiff contends the ALJ misstated the findings of the 2020 x-ray of her left hand and

3   wrist as showing "no degenerative or inflammatory changes," when a review of that entry states

4   there was "diffuse severe swelling" of the left hand and wrist, and the ALJ misstated that "the

5   record contains no recommendation for surgical intervention." (*Id*. at 20; AR 1082).  However,

6   elsewhere in the ALJ's decision, she recognizes that the 2020 x-ray showed "diffuse, severe

7   swelling" but the same testing explicitly indicated that there were "no degenerative changes or

8   inflammatory changes noted" (AR 658, 1082), and the ALJ specifically found "[o]verall, there

9   are no consistent complaints for the carpal tunnel syndrome. … Dr. Eagan offered to do surgery

10  for the carpal tunnel, with the claimant declining, due to fear of getting a keloid." (AR 428

11  (noting keloids were possible), 658-59).   Second, Plaintiff argues the ALJ failed to address

12  treatment notes observing decreased sensation and diminished capacity of her hands, and

13  "conflat[ed] findings regarding upper extremity strength, range of motion, reflexes and sensation

14  to imply that findings regarding the bilateral hands are the same. …. [but] exactly none of these

15  entries indicate that there was any testing of Plaintiff's hands." (Doc. No. 15 at 20-21).  As noted

16  by Defendant, however, "Plaintiff offers no support for her argument that hands are not part of

17  the upper extremity," and the treatment notes include several observations regarding tenderness in

18  Plaintiff's left finger as part of the examination of her "upper extremities." (Doc. No. 17 at 20

19  (citing AR 1139 ("left first finger mild tenderness"), 1142 ("left wrist joint tenderness with [range

20  of motion], left first finger tenderness")).

21       The Court's review of the ALJ's decision indicates she did consider examination findings

22  and objective evidence in support of this finding, including several of the records cited by

23  Plaintiff in support of her argument.  Specifically, as to Plaintiff's carpal tunnel, the ALJ cited

24  March 2017 nerve conduction studies finding bilateral carpal tunnel syndrome moderate to severe

25  on the right and moderate on the left, 2021 electromyography study showing ongoing moderate

26  bilateral carpal tunnel syndrome and mild to moderate bilateral multilevel cervical radiculopathy,

27  positive Tinel and Phalen's sign bilaterally, findings of decreased sensation cited by Plaintiff in

28  support of her argument, normal x-rays of the bilateral hands in 2017 and 2020 with no

10

1   degenerative or arthritic changes, and cervical spine x-rays in February 2022 showing mild disc

2   space narrowing consistent with early degenerative disc disease; as well as examination findings

3   throughout the relevant adjudicatory period of normal or intact strength, normal sensation and

4   reflexes, no joint tenderness, and normal range of motion at the cervical spine and bilateral

5   extremities.  (AR 422-27, 430, 434-35, 499, 656-58, 1065, 1071, 1075, 1082, 1085-86

6   (recommending continued use of wrist braces and medication), 1089, 1092-97, 1099, 1102, 1105,

7   1108, 1118, 1128, 1130, 1133, 1145, 1148, 1168, 1180).  Thus, when viewing the record as a

8   whole, the ALJ explicitly recognized evidence in the record that could be considered more

9   favorable to Plaintiff and nonetheless found the severity of her symptom claims regarding

10  limitations due to carpal tunnel were inconsistent with the weight of the medical evidence.  (*See*

11  AR 29-30).  "[W]here evidence is susceptible to more than one rational interpretation, it is the

12  [Commissioner's] conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

13  Cir. 2005).  This was a clear and convincing reason, supported by substantial evidence, for the

14  ALJ to discount Plaintiff's symptom claims when formulating the RFC.

15      Next, the ALJ found "the record shows little impact in physical functioning given

16  independent care of self, care of two minor children and ability to engage in online schooling

17  involving significant use of the bilateral upper extremities with use of a computer," and playing

18  online video games with her children.  (AR 656-57).  A claimant need not be utterly incapacitated

19  in order to be eligible for benefits.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989); *see also*

20  *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on

21  certain activities . . . does not in any way detract from her credibility as to her overall disability.").

22  However, even where daily activities "suggest some difficulty functioning, they may be grounds

23  for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally

24  debilitating impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal

25  citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a).  Plaintiff argues there

26  is "no evidence regarding the amount of time or frequency of occasions that [she] engaged" in

27  activities like playing video games, or how much time in a typical day she used her hands while

28  completing 12 credit hours of online schooling; and "[t]he fact that Plaintiff cares for minor

1   children is not, in and of itself, evidence that Plaintiff can use her hands to perform gross and fine

2   manipulation for the majority of the day." (Doc. No. 15 at 22).

3        However, regardless of evidence that could be viewed more favorably to Plaintiff, it was

4   reasonable for the ALJ to conclude that Plaintiff's ability to attend full-time online classes

5   including use of a laptop and posting on forums as part of the curriculum, assisting her children

6   with homework and caring for them as young children "without any issues noted" in the record,

7   cooking, and playing video games that "require the use of hands to operate controls," "is not

8   supportive of her allegations in extreme limitations in the use of her hands" including inability to

9   use them more than three to five minutes at a time. (AR 436, 659, 739, 741, 743-44, 751, 1044-

10   45 (reporting no concerns with household chores and "meaningful activities" including gardening

11   and video games)); *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for

12   discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating

13   impairment); *see also Tommasetti*, 533 F.3d at 1040 (ALJ may draw inferences logically flowing

14   from evidence); *Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one

15   interpretation, the ALJ's conclusion must be upheld). The Court concludes that the ALJ provided

16   clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom

17   claims when formulating the RFC.[3]

18        For the foregoing reasons, the ALJ provided a detailed review of the medical evidence,

19   properly evaluated the medical opinion evidence under the new regulations, and properly

20   discounted Plaintiff's subjective complaints regarding bilateral carpal tunnel syndrome, in

21   assessing Plaintiff's RFC. Plaintiff does not cite, nor does the Court discern, any specific

22   functional limitations related to carpal tunnel syndrome in the medical record, including the

23
24   [3] While not identified by either party, the ALJ additionally noted that Plaintiff the record includes no
   treatment records for any "issue" from July 2018 through the first week in April 2019, a period she was
   also working as a Lyft driver. (AR 657 ("If her back, or even the carpal tunnel syndrome was really
25   bothering her during that period, there would have been some treatment.")); *Carmickle*, 533 F.3d at 1161
   n.2 (court may decline to consider issues not raised with specificity in plaintiff's opening brief).
26   Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of
   treatment may be the basis for rejection of Plaintiff's symptom claims unless there is a showing of a good
27   reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *see also Bray v. Comm'r Soc. Sec.
   Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (the ability to work may be considered in assessing symptom
28   claims).

1    medical opinions, that were not properly accounted for the in the assessed RFC.  Thus, Plaintiff

2    has not shown that the ALJ committed harmful error in formulating the "physical RFC."  *See*

3    *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is

4    responsible for translating and incorporating clinical findings into a succinct RFC"); *Bufkin v.*

5    *Saul*, 836 Fed. App'x 578, 579 (9th Cir. 2021) ("Contrary to [plaintiff's] argument, the ALJ did

6    not rely on her 'lay interpretation' of medical evidence.  Rather, the ALJ simply summarized the

7    medical evidence from [physicians]; she did not interpret any x-rays or test results directly.  ALJs

8    need not seek the opinion of a medical expert every time they review new medical evidence and

9    make a RFC determination."); *see also Lamas v. Saul*, 2020 WL 6561306, at *9 (E.D. Cal. Nov.

10   9, 2020)) ("The Court finds that the ALJ's error in this case was harmless [as] [t]he limitations

11   that the ALJ included in the RFC pertaining to Plaintiff's mental impairments were more

12   restrictive than those to which the medical opinions of record opined, yet the ALJ nonetheless

13   found that there would be work available with those more stringent limitations."); *Johnson v.*

14   *Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("overinclusion of debilitating factors is

15   harmless").

16         **B. Mental RFC**

17         To the extent discernable, Plaintiff argues the ALJ erred by failing to incorporate mild

18   mental limitations in Plaintiff's ability to interacting with others and concentrating, persisting, or

19   maintaining pace in the assessed RFC.  This argument is unavailing for several reasons.  First, the

20   limitations cited by Plaintiff in support of this argument were assessed as part of the special

21   psychiatric review technique (PRT) used to determine the degree of functional limitation at step

22   two and three of the sequential analysis.  (AR 645-48); *see Garcia v. Comm'r of Soc. Sec.*, 2022

23   WL 2110709, at *10 ("the limitations identified in the 'paragraph B' criteria are not a residual

24   functional capacity assessment but are used to rate the severity of mental impairments at steps 2

25   and 3 of the sequential evaluation process.").  The PRT requires an ALJ to consider the degree of

26   functional limitation resulting from the mental impairment in four broad functional areas: (1)

27   understanding, remembering, or applying information; (2) interacting with others; (3)

28   concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. §

1   404.1520a(c)(3).  Here, the ALJ found that Plaintiff had no limitations in understanding,

2   remembering, or applying information and adapting or managing oneself.  (AR 645).  The ALJ

3   found Plaintiff had mild limitations[4] in interacting with others and concentrating, persisting, or

4   maintaining pace.  (*Id.*).

5          Defendant argues "the Ninth Circuit has confirmed that, so long as an ALJ considers the

6   claimant's mental limitations, the ALJ is not required to include those mental limitations into the

7   RFC."  (Doc. No. 17 at 14); *Woods*, 32 F.4th at 794 (rejecting plaintiff's argument that the ALJ

8   failed to include mild mental limitations from "paragraph B" criteria in the RFC determination);

9   *Tyson v. Kijakazi*, 2023 WL 2313192, at *5 (E.D. Cal. Mar. 1, 2023) ("As in *Woods*, the court

10  likewise finds that the ALJ did not err by failing to include any mild mental limitations in the

11  RFC."); *Hilda V.A. v. Kijakazi*, 2023 WL 1107867, at *4 (C.D. Cal. Jan. 30, 2023) (noting *Woods*

12  resolved previous district court conflict regarding whether the ALJ erred in finding mild mental

13  limitation in the PRT analysis and then failing to account for those limitations in the RFC, and

14  finding no procedural error where the ALJ indicated the RFC reflects the degree of limitation

15  found in the PRT analysis).  The Court agrees.  Here, the ALJ expressly stated that the RFC

16  assessment "reflects the degree of limitation … found in the 'paragraph B' mental function

17  analysis."  *See Tyson*, 2023 WL 2313192, at * 5 ("When an ALJ performs the Paragraph B

18  analysis and indicates the 'degree of limitation' is incorporated into the RFC, this is sufficient to

19  carry the burden imposed by the Regulations."); *Tyler M.E. v. O'Malley*, 2024 WL 1887052, at

20  *4 (Apr. 29, 2024) (same).  Moreover, Plaintiff does not challenge the ALJ's conclusion at step

21  two, nor does she "identify any particular evidence that the ALJ failed to consider or explain why

22  the record does not support the ALJ's findings regarding her mental functioning."  *See Woods*, 32

23  F.4th 794.  Thus, the Court finds no error in the ALJ's assessment of Plaintiff's alleged mental

24  health limitations at any step of the sequential analysis.

25         Second, Plaintiff's argument is premised on the vocational expert's response to a

26  hypothetical posed in part by Plaintiff's counsel at the hearing that "if an individual were limited

27

28  [4] A mild limitation means that a plaintiff's independent, appropriate, and effective functioning in the
    specified area is "slightly limited."  20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00(F)(2)(b).

1   to only occasional use of the hands and further limited to reasoning level two work, no

2   occupations would be available." (Doc. No. 15 at 23-24; AR 757-58).  According to Plaintiff,

3   "*[a]ssuming* that Plaintiff's ability to use her hands for gross and fine manipulation on an

4   occasional basis, as argued above, the issue of Plaintiff's capacity to perform level three, versus

5   reasoning level two, is outcome determinative." (*Id*. at 24-25) (emphasis added).  However, the

6   ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by

7   substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001); *cf. Robbins v.*

8   *Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly

9   supported limitations").  Here, as discussed in detail *supra*, the ALJ's RFC assessment that

10  Plaintiff can frequently reach, handle, finger, feel, push and/or pull with the bilateral upper

11  extremities is supported by substantial evidence.  Thus, the ALJ did not err by excluding

12  limitations based on occasional use of hands from the RFC and the hypothetical posed to the

13  vocational expert, and it is unnecessary for the Court to consider any ensuing argument regarding

14  Plaintiff's mental reasoning capability.

15       For the foregoing reasons, the Court finds no error in the ALJ's assessment of the physical

16  or mental RFC based on all relevant evidence in the record.  (AR 651-65); *see Bayliss*, 427 F.3d

17  at 1217.

18                          **VIII.   CONCLUSION**

19       A reviewing court should not substitute its assessment of the evidence for the ALJ's.

20  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment

21  as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail

22  above, the ALJ properly assessed the RFC.  After review, the Court finds the ALJ's decision is

23  supported by substantial evidence and free of harmful legal error.

24       Accordingly, it is **ORDERED**:

25       1.  Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED.

26       2.  Defendant's Cross-Motion for Summary Judgment (Doc. No. 17) is GRANTED, and

27            the decision of the Commissioner of Social Security is AFFIRMED for the reasons set

28            forth above.

15

1      3.  The Clerk is directed to enter judgment in favor of the Commissioner of Social

2      Security, terminate any pending motions/deadlines, and close this case.

Dated:    September 9, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

16